IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 4, 2019 Session

## SHERILYN MARY DAWSON v. DANA LEE DAWSON

**Appeal from the Chancery Court for Knox County**
**No. 162548-1          John F. Weaver, Chancellor**

_____

### No. E2018-00990-COA-R3-CV
_____

In this divorce matter, the parties engaged in protracted litigation concerning the initial amount of the father's child support obligation before the trial court set the amount of child support to be paid. Meanwhile, the father sought a modification of his child support obligation. The trial court determined that its order entered on January 27, 2014, was final as to the amount of the father's initial child support obligation because the order left no remaining issues to be determined. The father has appealed. Discerning no reversible error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Lori F. Fleishman and Thomas M. Leveille, Knoxville, Tennessee, for the appellant, Dana Lee Dawson.

Charles Child and Sloane Davis, Knoxville, Tennessee, for the appellee, Sherilyn Mary Dawson.

## OPINION

### I. Factual and Procedural Background

Sherilyn Mary Dawson ("Mother") filed a complaint for divorce against Dana Lee Dawson ("Father") on October 28, 2004, in the Knox County Chancery Court ("trial court"). In her complaint, Mother stated that the parties had been married since 1992 and

that two children had been born of the marriage: a son, D.D., born in 1996 and a daughter, E.D, born in 2000. Mother attached a proposed temporary parenting plan to her complaint, in which she suggested that the children would reside with her and that Father would enjoy co-parenting time every other weekend. Father filed an answer on November 23, 2004.

Following approximately two years of proceedings, the parties reached an agreement concerning the issues in dispute. The trial court entered a "Final Order of Divorce" on January 4, 2007, which incorporated the parties' agreement. This agreed order provided that Mother would be the primary residential parent of the parties' children. The court concomitantly entered a permanent parenting plan order ("PPP"), which provided that Father would enjoy co-parenting time with the children every other weekend. The PPP contained a notation that the computation of annual days of residential co-parenting time the children would spend with each parent would be calculated by the child support magistrate. Father was also ordered to pay child support to Mother in the amount of $1,547.00 per month "without a presumption of correctness pending the determination by the child support referee." No child support worksheet was attached. Both the agreed order and the PPP were entered *nunc pro tunc* to August 23, 2006.

The hearing before the child support magistrate was held on May 18, 2007. The order from that hearing was not filed until June 10, 2010, but it was entered *nunc pro tunc* to May 18, 2007. In the order, the magistrate stated that the parties had announced that they had reached an agreement that the child support amount of $1,547.00 per month was correct and that no arrearage was due. The magistrate therefore ordered that Father's child support obligation would remain at $1,547.00 per month. Again, no child support worksheet was attached to the order.

On June 18, 2010, Father appealed the magistrate's ruling to the trial court. The trial court conducted a hearing concerning the appeal on September 27, 2012. In its order dated January 24, 2013, the trial court found that because there was no child support worksheet attached to the previous order, the matter had to be remanded to the magistrate for completion of a child support worksheet in accordance with the Tennessee Child Support Guidelines.

Following the remand from the trial court, the child support magistrate conducted a hearing on April 2, 2013. In its order dated that same day, the magistrate noted that the parties had agreed that Father's child support obligation should be set at $1,129.00 per month. The issue of underpayment or overpayment of child support was reserved for further hearing. A child support worksheet supporting this award was attached to the order. On April 10, 2013, Father appealed the magistrate's findings to the trial court.

On November 4, 2013, the child support magistrate entered an order from a hearing conducted on June 14, 2013, concerning the issue of father's underpayment or overpayment of child support. The magistrate determined that during the period of May 18, 2007, to May 31, 2013, Father had accrued a child support arrearage due to underpayment in the amount of $10,904.80. Mother was thus granted a judgment against Father for that amount, plus interest at twelve percent per annum. The magistrate reserved any issue concerning an award of attorney's fees for an in-chambers hearing based upon presentation of affidavits. Father filed a second notice of appeal to the trial court of the magistrate's findings contained in the November 4, 2013 order.

On December 18, 2013, Father filed a motion seeking to modify his child support obligation. Father averred that his income had decreased in 2007 and that there was a significant variance between his current child support obligation and the amount he should be paying due to his decreased income. Father stated that he had been unable to file a modification petition until the child support amount was finally determined by the magistrate following remand from the trial court. Father thus asked that his child support obligation be reduced retroactively to 2007.

On January 9, 2014, the trial court entered an order stating that Father had agreed to pay Mother's attorney's fees in the amount of $25,000.00. Subsequently, on January 27, 2014, the trial court entered an order concerning Father's appeal of the magistrate's child support determination, stating in pertinent part:

> After considering the pleadings, statements of counsel and the record as a whole, the Court found that the previous Findings and Recommendations made and recommended by Magistrate Brenda Lindsay-McDaniel should be confirmed with clarification in that proper child support was set pursuant to the parties' level of respective incomes as of May 18, 2007; however, no adjudication was made as to the parties' level of incomes after that date.
>
> It is, therefore, ORDERED ADJUDGED AND DECREED, that the Findings and Recommendation entered by Magistrate Brenda Lindsay-McDaniel on April 2, 2013 and November 4, 2013, respectively, shall hereby be CONFIRMED with CLARIFICATION that the proper child support was set pursuant to the parties' respective levels of income as of May 18, 2007; however, there was no adjudication as to their respective levels of income after that date.

On January 31, 2014, Father filed a "Petition to Modify the Previous Orders of the Court," alleging that the parties' son, who was seventeen years of age at that time, had expressed a preference to reside with Father full time. Father further averred that the parties' daughter, who was thirteen years of age, had stated that she desired to spend

- 3 -

equal amounts of time with each parent. Father thus sought a modification of the parties' PPP as well as a resultant modification of his child support obligation predicated on the change in co-parenting schedule.

On January 5, 2016, the child support magistrate conducted a hearing concerning Father's petition to modify his child support obligation. In its resultant order entered on May 24, 2016, *nunc pro tunc* to January 5, 2016, the magistrate noted that the parties' son had attained the age of majority and graduated from high school on May 31, 2015, and that the parties had been equally dividing their co-parenting time with their daughter. The magistrate determined that Father's child support obligation would therefore need to be calculated in two "stages," with the first stage beginning on January 1, 2014, which was the date Father filed his petition to modify, and ending on May 31, 2015, when Father's child support obligation concerning the parties' son ended. Based on Father's income and the amount of co-parenting time that Father was exercising with the children during that period, the court determined that Father's child support obligation would remain at the previously ordered amount of $1,129.00 per month because Father had failed to demonstrate that a significant variance existed warranting a modification.

The magistrate determined that the second stage of Father's child support obligation would cover the time period from June 1, 2015, to the date of the hearing and would only address Father's obligation for the parties' daughter, for whom the parents had been enjoying equal co-parenting time. The magistrate again found that child support would remain at the same monthly amount because Father had failed to demonstrate that a significant variance existed. The magistrate also determined that Father had accrued a child support arrearage in the amount of $15,313.00 for the period of April 1, 2013, to the present, and the magistrate found Father to be in contempt. The magistrate reserved sentencing on Father's contempt charge, determining that the contempt could be purged by payment of the arrearage. Father was thus ordered to pay $371.00 per month toward the arrearage in addition to his regular child support amount, for a total monthly payment of $1,500.00. The magistrate further determined that attorney's fees would be awarded to Mother in an amount to be determined after the filing of an affidavit. Child support worksheets were attached to the order.

On June 1, 2016, Father filed an appeal from the magistrate's order to the trial court. Meanwhile, on August 25, 2016, the trial court entered an order from a hearing conducted on October 14, 2015, regarding Father's previously filed petition for modification and the trial court's January 27, 2014 order of confirmation. The trial court attached and incorporated the transcript of its oral ruling from the October 14, 2015 hearing. The court directed the parties to file a chronology of the pleadings filed and orders entered concerning child support in order for the court to determine "whether . . . the initial child support should be set pursuant to the parties' actual incomes following May 18, 2007, and/or whether the January 27, 2014 Order constitutes a final order,

- 4 -

pursuant to Rule 54 of the Tennessee Rules of Civil Procedure." The court entered its order *nunc pro tunc* to October 14, 2015.

On May 19, 2017, Mother filed a motion pursuant to Tennessee Rule of Civil Procedure 60. Mother asserted that there had been a child support worksheet attached to the 2007 PPP that was sent to the trial court, as established by the testimony of her original attorney in this matter, although said worksheet was not filed with the PPP due to an apparent clerical error. Mother accordingly asserted that the child support worksheet should be filed and attached to the January 4, 2007 PPP pursuant to Rule 60.01 or 60.02.

On August 21, 2017, the trial court entered a memorandum opinion, which explained in pertinent part:

> This is the latest of ongoing acrimony between two parties divorced more than ten (10) years ago. The wife commenced the case upon her petition for divorce filed October 28, 2004. The parties have been in continuous litigation since that time. After long and enduring pre-divorce litigation, and multiple days of the divorce trial, the parties announced a settlement of their divorce case before the Court on August 26, 2006. In pertinent part, the parties announced the following:
>
> * * *
>
> With regard to child support, child support shall flow, and [Father's] income shall be based on $100,000. [Mother's] income shall be based on $27,000. [Father] shall maintain his life insurance with the children as beneficiary and show adequate proof of that to [Mother] upon demand.
>
> * * *
>
> With regard to coparenting time, [Father] shall have — principal coparenting shall reside with the mother. [Father] shall have as coparenting time in odd-numbered years, the first, third and fifth weekends, from Friday at 6:00 to Sunday at 6:00; on even-numbered years, the first and third weekends.
>
> [additional discussion concerning holiday co-parenting schedule]
>
> * * *

As can be seen from the above, the parties agreed to the mechanics for the determination for the precise amount of the child support obligation on August 23, 2006. However, in keeping with the parties' continuous disharmony, the parties failed to present the final divorce decree to the Court. On January 4, 2007, the Court conducted a two and one half hour hearing simply for the entry of the divorce decree. However, the parties did not present the child support worksheets or the permanent parenting plan, "to be prepared pursuant to the parties' agreement," but presented a newly found dispute as to the calculation of their co-parenting times under the terms announced by them. At the hearing on January 4, 2007, [Mother] presented a permanent parenting plan to the Court initially unsigned by [Father] and providing, in pertinent part, as follows:

## I. RESIDENTIAL PARENTING SCHEDULE

### A. RESIDENTIAL TIME WITH EACH PARENT

The Primary Residential Parent is the mother.

Under the schedule set forth below each parent will spend the following number of days with the children:

The issue as to the number of days to each parent is reserved to the child support referee.

* * *

## III. FINANCIAL SUPPORT

### A. CHILD SUPPORT.

Father's gross monthly income is $8,333.00.
Mother's gross monthly income is $2,250.00

1. The final child support order is as follows:

a. The father shall pay to the other parent as regular child support the sum of $1,547.00 monthly. The Child Support Worksheet is attached hereto as Exhibit A to this Order.[] Without a presumption of correctness pending a determination by the child support referee.

- 6 -

2.  Payments shall begin on the 1ˢᵗ day of Sept., 2006.

This support shall be paid by direct deposit to Child Support Services for the State of Tennessee.

The Court entered the above plan on January 4, 2007, *nunc pro tunc* as of August 23, 2006.  At the hearing on January 4, 2007, the father and his counsel signed the plan at the bottom of page 7 below the places designated for them.  The only issues, referred to the Child Support Magistrate, were the "number of days to each parent" with the resultant child support obligation to be thereby calculated.

The parties went to the Child Support Magistrate on May 18, 2007, and agreed that the monthly child support obligation set out in the permanent parenting plan in the amount of $1,547.00 was correct and that it should remain in the amount of $1,547.00.  However, the order was not entered by the Child Support Magistrate until June 10, 2010, *nunc pro tunc* as of May 18, 2007.  No worksheet was attached to the order.  No worksheet had been attached to the permanent parenting plan signed by the Court on January 4, 2007, because the determination of the actual daily division of co-parenting time between the parents was referred to the Child Support Magistrate together with the calculation of the monthly amount of child support based upon the information in the permanent parenting plan. There is no evidence in the record that either party presented an order for entry on the hearing of May 18, 2007, prior to June 8, 2010.  The order was an agreed order; however, the father appealed from his agreed order on June 18, 2010. The parties appeared before this Court on September 27, 2012, on the father's appeal. The Court remanded the matter back to the Child Support Magistrate for the sole purpose of preparing the child support worksheet, as originally contemplated by the announcement of August 23, 2006, the permanent parenting plan signed by the Court on January 4, 2007, and the parties agreement on May 18, 2007.  On April 2, 2013, the Child Support Magistrate completed the worksheet and determined the child support obligation to be $1,129.00 per month.  The father again appealed that determination.

On June 14, 2013, the parties went before the Child Support Magistrate as a follow-up on the hearing on April 2, 2013, upon the issues of child support arrearages and/or overpayments, attorney's fees and court costs. Per her order entered November 4, 2013, upon the June 14, 2013 hearing, the Child Support Magistrate granted an arrearage judgment

against the father in the amount of $10,904.80, taxed the costs to him, and reserved the issue of attorney's fees. The father also appealed that determination on November 19, 2013, stating that the father took the appeal out of an abundance of caution in preserving his right to file a modification of the original order of child support.

On January 9, 2014, the parties appeared before this Court on the orders from the Magistrate of April 2, 2013 and November 4, 2013. The Court, on January 27, 2014, entered its ORDER OF CONFIRMATION WITH CLARIFICATION confirming the above orders of the Magistrate as to completion of the worksheet for the hearing of May 18, 20[0]7, as originally contemplated by the announcement of August 23, 2006, and the permanent parenting plan signed by the Court on January 4, 2007; determination of the child support obligation to be $1,129.00 per month; the arrearage judgment of $10,904.80; and the taxing of court costs to the father. The Court's order of November 27, 2014, clarified that the determination of the child support obligation was set per the parties income levels as of May 18, 2007 (as set out in the permanent parenting plan of January 4, 2007) and that there was no adjudication as to the respective levels of income after that date. On January 9, 2014, the Court entered an order per the parties' agreement, awarding a judgment, in the amount of $25,000.00, to the mother for her attorney's fees and discretionary costs. That order resolved all issues pending before the Court from the parties announcement of August 23, 2006, the permanent parenting plan of January 4, 2007, and the appeals from the Magistrate. There was no other issue unresolved as of the date of entry of the order of January 9, 2014, and the order became final and res judicata as to all such matters.

On January 31, 2014, the father filed a petition entitled, "PETITION TO MODIFY THE PREVIOUS ORDER OF THE COURT." The petition avers that the modifications were necessary because of a change in the co-parenting time and that "this requested modification is a renewed request that child support be modified and set upon a significant variance between the original amount which was formally established recently by court order, and the amount which should be paid now, pursuant to the Guidelines." The petition also states that "the father renewed his request that child support be modified retroactively, once the significant variance occurred, given that the recent court order was made retroactive to 2007." Going back to the parties' announcement of August 23, 2006, and the permanent parenting plan signed by the Court on January 4, 2007, only two issues were assigned to the Magistrate. The two issues were: (1) calculation of the parties' days of co-parenting time and (2) determination of the monthly

child support obligation for completion of the permanent parenting plan signed January 4, 2007, which contained the parties' levels of income. The record is devoid of any written request by the father for any modification of child support until he filed his petition on January 31, 2014. While the parties embattled each other and did not finish the determination of the monthly child support obligation until long after announcing that the case was settled on August 23, 2006, neither the Magistrate nor the Court had before it any determination of any amount of child support except as necessary to complete the parties' August 23, 2006, announcement and the permanent parenting plan of January 4, 2007.

On January 5, 2016, the parties went back before the Magistrate on the father's petition filed January 31, 2014. The Magistrate filed her order leaving the child support obligation at the rate set out in her order of April 5, 2013. The Magistrate's order also awarded an additional judgment against the father in the amount of $15,313.00 for arrearages and child support for the period of April 1, 2013 through December 31, 2015, together with the unpaid arrearage of $10,904.18 established in the magistrate's prior order of November 4, 2013, for total judgment of $26,217.80. Additionally, her order found the father to be in willful civil contempt of court for his failure to pay his child support obligation for the period of April 1, 2013 through December 31, 2014. Finally, the order required the father to pay a monthly child support obligation of $1,500.00 per month consisting of $1,129.00 as current ongoing child support and $371.00 toward the support arrearage. On June 1, 2016, the father appealed this most recent order of the Magistrate.

On October 14, 2015, the parties' counsel appeared before the Court on the father's petition for modification pursuant to the order of confirmation with clarification entered January 27, 2014. On August 25, 2016, the parties' counsel appeared and the Court entered an order continuing the hearing on the issues raised by the father of ["]whether or not the initial child support should be set pursuant to the parties' actual incomes following May 18, 2007 hearing, and/or" the issue raised by the mother of "whether the January 27, 2014 order constitutes a final order, pursuant to rule 5[4 of] the Tennessee Rules of Civil Procedure." The hearing was reset to May 3, 2017, followed by two hearings on the disallowance of the father's post hearing brief on June 6, 2017, and August 3, 2017.

The trial court explained that following entry of the magistrate's April 2, 2013 and November 4, 2013 orders setting child support, the court entered an order on January 27,

2014, which confirmed those earlier orders. The court further explained that on January 9, 2014, the trial court had entered an order setting the amount of an award of attorney's fees and discretionary costs to Mother.[1] The court accordingly determined that these orders "left no claim pending with respect to the initial setting of child support for completion of the permanent parenting plan of January 4, 2007." Therefore, the court stated that the January 27, 2014 order was a final order.

On September 20, 2017, Father filed a motion seeking to alter or amend the trial court's August 21, 2017 memorandum opinion. On May 14, 2018, the trial court entered an order denying Father's motion. Father timely appealed.

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by determining that the January 27, 2014 order was a final order as defined by Tennessee Rule of Civil Procedure 54.

2. Whether the trial court erred by failing to conduct a *de novo* evidentiary hearing concerning the appeal of the child support magistrate's determination of Father's child support obligation.

3. Whether the trial court erred by failing to calculate Father's child support obligation based on the actual incomes of the parties beginning in 2007.

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law *de novo* with no presumption of correctness. *See Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding

---

[1] The trial court inadvertently listed the date of this order as June 9, 2014, but the order was actually entered on January 9, 2014.

witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Determinations regarding child support are reviewed under an abuse of discretion standard. *See Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As this Court has explained:

> Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).
>
> * * *
>
> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the

evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Id.*

### IV. Finality of January 27, 2014 Order

Father posits that the trial court erred by determining that the January 27, 2014 order was a final order. According to Father, because the order stated that "child support was set pursuant to the parties' level of respective incomes as of May 18, 2007" and that "no adjudication was made as to the parties' level of incomes after that date," the order could not be final because it failed to resolve the issue of the parties' respective incomes after May 18, 2007. We disagree.

As our Supreme Court has explained concerning final judgments:

> A judgment is final in Tennessee "when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 460 (Tenn. 1995) (quoting *Saunders v. Metro. Gov't of Nashville & Davidson County*, 214 Tenn. 703, 383 S.W.2d 28, 31 (1964)). In the absence of an express direction of the court to the contrary, a judgment that disposes of only some of the claims, issues, or parties is not a final judgment and is subject to revision by the court at any time before the entry of a final judgment adjudicating all claims and the rights and liabilities of all parties. Tenn. R. Civ. P. 54.02; *see also* Tenn. R. App. P. 3(a) (stating that such a judgment is not enforceable or appealable); *Stidham v. Fickle Heirs*, 643 S.W.2d 324, 328 (Tenn. 1982). As a general rule, a trial court's judgment becomes final thirty days after its entry unless a party files a timely notice of appeal or specified post-trial motion. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996); see Tenn. R. App. P. 4(a)-(c).

*Creech v. Addington*, 281 S.W.3d 363, 377 (Tenn. 2009).[2]

---

[2] Concerning the "specified post-trial motions" that would affect the finality of a judgment, Tennessee Rule of Appellate Procedure 4(b) provides:

> [I]f a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted;

Upon thorough review of the pleadings in this matter, we determine that the January 27, 2014 order was a final order because it finally and completely adjudicated the issue of Father's initial child support obligation, which was the only issue remaining from the time of the parties' divorce. To review the pertinent chronology in this case, the trial court entered the parties' divorce decree and PPP on January 4, 2007, thereby ordering Father to pay child support to Mother in the amount of $1,547.00 per month. The court noted that this amount was "without a presumption of correctness" because the child support magistrate would be required to calculate the number of days of co-parenting time allocated to each parent under the agreed schedule in order to determine the proper amount of child support. The magistrate conducted a hearing on May 18, 2007, and based on the parties' agreement, affirmed that the child support award of $1,547.00 per month was accurate based on the allocation of co-parenting time.

Unfortunately, the written order from the May 18, 2007 hearing was not entered until June 10, 2010, although it was designated as having been entered *nunc pro tunc* to May 18, 2007. Father appealed the June 10, 2010 order to the trial court, which remanded the child support issue back to the magistrate due to the absence of a child support worksheet. Upon remand, the magistrate conducted a hearing on April 2, 2013, wherein the parties announced their agreement that Father's child support obligation should have been set at $1,129.00 per month. The magistrate's order therefore set Father's child support obligation at $1,129.00 per month, and a proper child support worksheet was attached to the order. This worksheet demonstrates that the parties' respective incomes were the same as those reflected in the parties' 2007 PPP.

Applying the child support amount of $1,129.00 per month, the magistrate subsequently calculated Father's child support arrearage to be $10,904.80 for the period spanning May 18, 2007, to May 31, 2013. The magistrate also reserved the issue of an award of attorney's fees for later determination. Father appealed both the magistrate's order setting child support and the magistrate's order setting the amount of his child support arrearage to the Chancellor.

The trial court subsequently entered an order on January 9, 2014, awarding to Mother attorney's fees in the amount of $25,000.00 based on the parties' agreement. Later, on January 27, 2014, the trial court confirmed the magistrate's ruling concerning Father's child support obligation. As previously explained, the magistrate's child support determination from April 2, 2013, was applied retroactively to May 18, 2007, the date of

---

(3) under Rule 59.07 for a new trial; (4) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

- 13 -

the first hearing before the magistrate concerning an initial setting of child support in conjunction with the parties' divorce. The trial court's order therefore included language explaining that child support was set "pursuant to the parties' level of respective incomes as of May 18, 2007."

With respect to the initial setting of child support in this case, it is clear that the January 27, 2014 order left nothing further for the trial court to decide concerning Father's initial child support obligation or any other issue related to entry of the parties' divorce. *See Creech*, 281 S.W.3d at 377. Therefore, the January 27, 2014 order was a final order. *See id.* It is undisputed that neither party filed a notice of appeal or specified post-trial motion concerning this order.[3] *See id.*

Moreover, as this Court has previously explained:

> The fact [that] a domestic court retains "exclusive control" over domestic decrees such as parenting plans and child support, however, does not deprive the domestic decrees, once final, of the quality of finality or the principles of *res judicata*. *See Damron v. Damron*, 367 S.W.2d 476, 480 (Tenn. 1963). . . . Once a judgment concerning a permanent parenting plan or child support decree becomes a final judgment, however, the trial court loses the right to exercise control over it due to the fact the judgment is final for the purpose of appeal and final as *res judicata* upon the facts then existing.

*Hodge v. Hodge*, No. M2006-01742-COA-R3-CV, 2007 WL 3202769, at *3 (Tenn. Ct. App. Oct. 31, 2007) (emphasis added). Ergo, because the trial court was adjudicating the initial setting of child support in the January 27, 2014 final order, it was proper for the court to solely consider the parties' respective incomes as of May 18, 2007, which was the date the magistrate had conducted the initial hearing concerning Father's child support obligation in conjunction with the parties' divorce. We conclude that Mother's first issue is without merit.

## V. Nature of Hearing on Appeal

Father asserts that the trial court erred by failing to conduct a *de novo* evidentiary hearing on appeal from the child support magistrate's determination concerning his child

---

[3] We note that in Father's January 31, 2014 petition, he sought to modify "previous orders" by requesting a modification of the parties' PPP as well as a modification of his child support obligation based on a change in the co-parenting schedule. As such, this motion was not a post-trial motion that would affect the finality of the January 27, 2014 order. *See* Tenn. R. App. P. 4(b).

support obligation. The statutory scheme with regard to child support proceedings before a magistrate provides in pertinent part:

> (g)    Upon the conclusion of the hearing in each case, the magistrate shall transmit to the judge all papers relating to the case, along with the magistrate's findings and recommendations in writing. A magistrate's decision on a preliminary matter, not dispositive of the ultimate issue in the case, shall be final and not reviewable by the judge.

> (h)    Any party may, within five (5) days thereafter, excluding nonjudicial days, file a request for a hearing by the judge of the court having jurisdiction. The judge may, on the judge's own motion, order a rehearing of any matter heard before a magistrate, and shall allow a hearing if a request for such is filed as herein prescribed. Unless the judge orders otherwise, any recommendation of the magistrate shall be in effect pending rehearing or approval by the court.

Tenn. Code Ann. § 36-5-405 (2017). Ergo, according to this statutory section, a party may request a hearing before the judge or chancellor by filing a request within five days following the hearing, and the judge or chancellor "shall allow a hearing" if such a request is filed as prescribed by the statute.

Mother asserts that Father's requests for hearings before the Chancellor were untimely. According to Mother, Father's appeals from the magistrate's orders were not filed within five days pursuant to the time limitation contained in Tennessee Code Annotated § 36-5-405(h). Assuming, *arguendo*, that this is true, Mother has failed to demonstrate that this issue was ever brought to the trial court's attention. Accordingly, we cannot address this argument on appeal. *See Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) (stating that issues not raised in the trial court are waived on appeal).

This Court has previously determined that Tennessee Code Annotated § 36-5-405 does not provide for the right to a *de novo* hearing by the judge or chancellor following a magistrate's child support determination. In *Thompson v. Thompson*, No. 03A01-9207-CV-00256, 1993 WL 20191, at *1 (Tenn. Ct. App. Jan. 20, 1993), the mother requested a hearing before the trial court concerning the magistrate's reduction of the father's child support obligation. The trial court denied a *de novo* hearing, affirming the magistrate's decision, and the mother appealed to this Court. *See id*.

On appeal, this Court determined that the mother in *Thompson* was not entitled to a *de novo* hearing as a matter of law. *See id*. This Court explained that "Tennessee Code Annotated § 36-5-401 *et seq*., establishes the procedure to expedite support proceedings

- 15 -

by delegating their administration" to a magistrate, who "has the same authority and power as a Circuit Judge to conduct hearings and other proceedings in accordance with the statutory scheme." *See id*. While noting that the magistrate's determination was subject to review by the trial court, this Court also stated that "[t]he statute is intended to expedite and not delay support proceedings, and does not require a *de novo* trial before the Chancellor on issues tried by the referee as a factfinder." *See id*.

Father asserts that this Court should depart from the holding in *Thompson* and instead apply case law interpreting a similar statutory provision, Tennessee Code Annotated § 37-1-107(e) (Supp. 2019), concerning juvenile court magistrates. We decline to do so. Tennessee Code Annotated § 37-1-107(e) expressly provides for a *de novo* hearing while Tennessee Code Annotated § 36-5-405(h) does not. Furthermore, we note that juvenile court magistrates can be called upon to adjudicate "any case or class of cases over which the juvenile court has jurisdiction," including dependency and neglect proceedings, custody proceedings, and proceedings to terminate parental rights. *See* Tenn. Code Ann. §§ 36-1-113, 37-1-103, 37-1-107(b). Clearly, these types of matters involve more than simply "expedit[ing] support proceedings." *See Thompson*, 1993 WL 20191, at *1.

Based on prior precedent from this Court, we determine that Father was not automatically entitled to a *de novo* hearing before the Chancellor concerning his appeal of the magistrate's child support ruling. We therefore conclude that Father's second issue is also without merit.

### VI. Income Determination

Finally, Father argues that the trial court erred by failing to calculate his child support obligation based on the actual incomes of the parties beginning in 2007. However, having determined that the trial court's January 27, 2014 order was a final order and that Father failed to file a notice of appeal therefrom, we further determine that Father cannot now challenge that order on appeal. *See City of Memphis v. Lesley*, No. W2012-01962-COA-R3-CV, 2013 WL 5532732, at *9 (Tenn. Ct. App. Oct. 7, 2013) ("Because the chancery court's order . . . became final when it was not appealed, we are precluded from considering the issue further on appeal.").

Moreover, this Court has explained:

A trial court's final decree fixing alimony and child support is *res judicata* as to all circumstances in existence at the time of the entry of said decree . . . . [T]o obtain an increase in child support thereafter, the petitioner has the burden of showing there has been a material change of

circumstances justifying an increase in child support, and that the change has taken place from and after the entry of the previous decree.

*Watts v. Watts*, No. 01-A01-9011-CH-00406, 1991 WL 93780, at \*2 (Tenn. Ct. App. June 5, 1991)  Therefore, to the extent that Father seeks an adjudication concerning the amount of his child support obligation following the initial setting as of May 2007, Father would have to seek a modification based upon a material change in circumstance.  *See id.*; *see also* Tenn. Code Ann. § 36-5-101 (Supp. 2019) ("Upon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered.").

## VII.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. This matter is remanded to the trial court for enforcement of the judgment and collection of costs assessed below.  Costs on appeal are taxed to the appellant, Dana Lee Dawson.

_____
THOMAS R. FRIERSON, II, JUDGE